# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISHMAEL ALI BURK, JR., | : | |
| MALIK MORAGNE, | : | |
| GEORGE PICKETT, | : | |
| GABRIEL RIVERA, | : | |
| ANGEL VALENTINE, | : | |
|    Plaintiffs, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 23-CV-4233** |
| | : | |
| WELLPATH, *et al.* | : | |
|    Defendants. | : | |

## MEMORANDUM

**SCHMEHL, J. /S/ JLS**                    **FEBRUARY   22, 2024**

Ishmael Ali Burk, Jr., Malik Moragne, George Pickett, Gabriel Rivera, and Angel

Valentine, all of whom are prisoners housed at SCI Chester ("SCIC"), filed this civil rights

action under 42 U.S.C. § 1983 alleging Eighth Amendment deliberate indifference claims.

Named as Defendants are SCIC; Wellpath, the contract medical services provider at SCIC; and

Wellpath employees Dr. Paul Little, Nurse Ms. Favoloro, Nurse Ms. Russo, and PA Nicholson.

SCIC and Wellpath are named in their official capacities while all other Defendants are named in

their individual capacities.

In prior Orders, Moragne, Pickett, Rivera, and Valentine were directed to file motions to

proceed *in forma pauperis* or pay the filing fee for this case.  (ECF Nos. 5, 7.)  Ishmael Ali Burk,

Jr. was directed to pay the filing fee since he is a "three-striker" subject to the restriction

contained in 42 U.S.C. § 1915(g) that prevents him from proceeding *in forma pauperis* absent an

allegation that he is in imminent danger.  (ECF Nos. 13, 14.)  Only Moragne and Pickett have

complied with these Orders.  Accordingly, the claims of Burk, Rivera, and Valentine will be

dismissed without prejudice for failure to prosecute.  The Court will grant the motions to proceed *in forma pauperis* filed by Moragne and Pickett and dismiss the Complaint on statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.    FACTUAL ALLEGATIONS[1]

Moragne and Pickett allege that the Defendants are in violation of the Eighth Amendment because they have failed to provide medical assistance and treatment, and discriminate against them because they are African American by offering white inmates better treatment.  (Compl. at 16-17.)  They also allege the Defendants' actions are negligent and reckless.  (*Id*. at 16.)  Moragne and Pickett, along with the other original plaintiffs who filed this case, collectively make generalized allegations that Wellpath has "misdiagnosed the Plaintiffs on multiple occasion because of the color of their skin," and "has created [an] atmosphere that resembles a high school setting bullying the Plaintiffs into not submitting sick calls slips about their injuries," which are left untreated.  (*Id*. at 17.)  Wellpath has allegedly covered up their injuries, "forcing them back to work and delaying medical treatment creating a slavery type of setting."  (*Id*.)  They allege that SCIC has bullied them into silence by covering up their injuries, denied their grievances, and uses a race-based system to decide who gets treatment.  (*Id*.)  They also allege they have been threatened by SCIC with "parole hits," denial of programs, and transfers to other facilities.  (*Id*. at 17-18.)

Defendants Little, Favoloro, Russo, and Nicholson have allegedly denied the Plaintiffs treatment because of their skin color, and have misdiagnosed and bullied them during medical

---

[1] The facts set forth in this Memorandum are taken from the Complaint (ECF No. 2). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. Because the allegations are repetitive, the Court will cite only the first time an allegation appears in the Complaint.

visits, "creating a Jim Crow law among the Plaintiffs." (*Id*. at 18.)  These Defendants have also allegedly forced the Plaintiffs back to work "creating a slavery atmosphere" and have caused the Plaintiffs to suffer additional injuries because they returned to work too early.  (*Id*.)  Dr. Little also allegedly overcharged the Plaintiffs (*id*. at 20), and Favoloro, Russo, and Nicholson also bullied them into not submitted sick calls slips (*id*. at 20-21.)

Moragne and Pickett, along with the other original plaintiffs who filed this case, collectively allege they have injuries including a collapsed lung, injured back, wrist, foot, and neck injuries, depression and anxiety.  (*Id*. at 7.)  However, they do not specify which Plaintiff, if any, suffers from any of these conditions.  They seek money damages.  (*Id*.)

## II.    STANDARD OF REVIEW

The Court will grant Moragne and Pickett leave to proceed *in forma pauperis.*[2] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss their Complaint if it fails to state a claim.  The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.  Because Moragne and Pickett are proceeding *pro se*, the Court construes the allegations of the Complaint liberally. *Vogt v. Wetzel*,

---

[2] Because Moragne and Pickett are prisoners, they must each still pay the full amount of the filing fee for this case in installments as required by the Prison Litigation Reform Act.

8 F.4th 182, 185 (3d Cir. 2021).  However, '"pro se litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F. 3d 239, 245 (3d Cir. 2013)).

## III.   DISCUSSION

Moragne and Pickett assert constitutional claims.  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.   Claims Against SCIC

Moragne and Pickett have named SCIC as a Defendant.  SCIC, as a facility operated by the Pennsylvania Department of Corrections, is an agency of the Commonwealth of Pennsylvania.  States are not considered "persons" for purposes of § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).  Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  The Commonwealth of Pennsylvania has not waived that immunity.  *See* 42 Pa. Cons. Stat. § 8521(b).  Accordingly, the claims for money damages asserted against SCIC are dismissed with prejudice.

### B.   Claims Against the Individual Medical Providers

#### 1.   Deliberate Indifference Claims

Moragne and Pickett assert claims against Dr. Little, Nurse Ms. Favoloro, Nurse Ms. Russo, and PA Nicholson alleging that they have failed to provide medical assistance and

treatment, misdiagnosed them, bullied them into not submitting treatment requests and during

their treatment sessions, sent them back to their prison jobs too early, and discriminate against

them because they are African American, while offering white inmates better treatment.  (Compl.

at 16-17.)  As noted, Moragne and Pickett filed this case collectively with other now dismissed

inmates and make only collective allegations about the Defendants' actions and the injuries they

have suffered without specifying which Defendant did what and what Plaintiff, if any, suffers

from any of these conditions.[3]  (*Id*. at 7.)  For this reason, the claims cannot proceed at this time

because they are undeveloped.

       To state a constitutional claim based on the failure to provide medical treatment, a

prisoner must allege facts indicating that prison officials were deliberately indifferent to his

serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is

not deliberately indifferent "unless the official knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as

requiring treatment or one that is so obvious that a lay person would easily recognize the

necessity for a doctor's attention."  *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834

F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly

alleged "where the prison official (1) knows of a prisoner's need for medical treatment but

intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-

---

[3] The one individual act that the Plaintiffs ascribe is that Dr. Little overcharged them for services.  While this may be an allegation related to a claim under state law, it fails to state a plausible deliberate indifference claim since there is no assertion that Plaintiffs were thereby denied care for a serious medical need.

medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058 (3d Cir. Sept. 8, 2023). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id*. (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Moragne and Pickett's claims are undeveloped because they fail to allege what medical care each of them required for their *own* serious medical need. Without that information, the Court is unable to determine whether their medical needs are serious and what, if any, treatment they were refused, delayed or prevented from receiving. Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual

knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  Where there are multiple

events and defendants at issue, alleging personal involvement often cannot be accomplished by

repeatedly and collectively referring to the "Defendants" as a group without clarifying the

specific basis for each Defendant's liability.  *See Lawal v. McDonald*, 546 F. App' x 107, 113

(3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word

"Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct

alleged'").  Moragne and Pickett make the same general allegations about medical care,

discrimination, and bullying against each individual Defendant without specifying what act or

failure to act each Defendant took that caused them harm.  For these reasons, the claims cannot

proceed at this time.

## 2.      Equal Protection Claims

The Court understands the allegation about treating white inmates differently to also raise

a possible Fourteenth Amendment equal protection claim against the medical providers.  As

such, this claim is also undeveloped.  "The Equal Protection Clause of the Fourteenth

Amendment commands that no State shall 'deny to any person within its jurisdiction the equal

protection of the laws,' which is essentially a direction that all persons similarly situated should

be treated alike." *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985) (quoting

*Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To allege a plausible equal protection violation, a

prisoner must allege "that he was treated differently than other similarly situated inmates, and

that this different treatment was the result of intentional discrimination based on his membership

in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan

v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)).  "Persons are 'similarly situated' for

purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell v.*

*City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted).  Additionally, to state

a race-based equal protection claim, a plaintiff must allege that defendants were motivated by

racial animus.  *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995) (citing *Griffin v. Breckenridge*,

403 U.S. 88, 102 (1971); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir. 1986)).  Although they

allege they were treated differently from white inmates, since Moragne and Pickett do not allege

what medical conditions each encountered and do not allege other inmates suffering from similar

conditions were treated differently, they fail to allege plausibly that other inmates were similarly

situated to themselves.  They also fail to allege facts, rather than legal conclusions, that could

support a plausible inference that the individual medical provider Defendants were motivated by

racial animus.

### C.    Claims Against Wellpath

Moragne and Pickett have also named Wellpath as a Defendant.[4]  A private corporation

under contract to provide medical services at a jail or prison may be liable under § 1983 in

certain circumstances.  The United States Court of Appeals for the Third Circuit has held that "a

private health company providing services to inmates 'cannot be held responsible for the acts of

its employees under a theory of respondeat superior or vicarious liability.'"  *Sims v. Wexford

Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden County Corr.

Facility*, 318 F.3d 575, 583 (3d Cir. 2003)).  Rather, in order to hold a private health care

company like Wellpath liable for a constitutional violation under § 1983, a plaintiff must allege

---

[4] Wellpath is named in its "official capacity."  Because an official capacity claim is treated as a suit against the entity that employs other persons who allegedly violated a plaintiff's rights, *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)), the Plaintiffs naming Wellpath in its "official capacity" is legally redundant.

the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d 575, 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted).  Moreover, vague and conclusory allegations about a defendant's policies are insufficient to allege a plausible claim.  *See Brown v. Delaware Cnty. Prison Bd. of Inspectors*, 741 F. App'x 135, 138 (3d Cir. 2018) (*per curiam*) ("Brown's vague and conclusory allegation that the defendants had a policy or custom of 'fail[ing] to provide an adequate level of security staffing,' is insufficient to state a claim.").

A plaintiff may also state a basis for liability against an entity like Wellpath by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019).

Moragne and Pickett assert no allegations to support a "failure-to" theory of liability against Wellpath.  A policy-based claim is also not plausible as alleged.  As with the individual medical provider Defendants, Moragne and Pickett assert only a generalized claim that Wellpath

has misdiagnosed them "because of the color of their skin," "has created [an] atmosphere that resembles a high school setting bullying the Plaintiffs into not submitting sick calls slips about their injuries," and covered up their injuries "forcing them back to work and delaying medical treatment creating a slavery type of setting."  (Compl. at 16-17.)  To the extent they assert an alleged policy or custom of racial discrimination, this claim suffers from the same problem as the claims against the individual medical providers, namely that Moragne and Pickett do not allege what medical conditions each encountered and thus cannot allege a plausible claim that they were treated differently from other inmates suffering from similar conditions.  As noted, they also fail to allege that the individual medical provider Defendants or Wellpath were motivated by racial animus.  The allegation they were misdiagnosed, without any specific information about what each of them suffered, is also conclusory and thus fails to allege a plausible claim.  *Iqbal*, 556 U.S. at 678.  The allegation that they were forced back to their prison jobs also fails to allege a plausible deliberate indifference claims absent more specific information about what, if any, medical reason should have prevented this from happening.

### D.      State Law Claims

Because the Court has dismissed the federal claims asserted by Moragne and Pickett, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is

some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any

defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting

*Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*,

592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the

state where he is domiciled, meaning the state where he is physically present and intends to

remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of

a prisoner before his imprisonment presumptively remains his domicile during his

imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's

burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker

State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972)

(stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the

parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A.

No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Moragne and Pickett do not allege the citizenship of the parties.  Rather, they provide

only Pennsylvania addresses for themselves and the Defendants at SCIC, which suggests that

they and some, if not all, of the Defendants may be Pennsylvania citizens.  Accordingly, they

have not sufficiently alleged that the parties are diverse for purposes of establishing the Court's

jurisdiction over any state law claims they intend to pursue.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Moragne and Pickett's Complaint

because their claims are not plausible as pled.  The claims against SCIC will be dismissed with

prejudice and the balance of the claims will be dismissed without prejudice.  Moragne and

Pickett will be granted leave to file an amended complaint if they are capable of alleging

additional facts to address the defects the Court has identified in their original Complaint.  An appropriate Order will be entered separately.

**BY THE COURT:**


 **/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**